## Story v. Story et al.

February 25, 1947.

J. C. Dedman, Judge.

Keenon & Odear for appellant.

Conley & McCartney for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

On February 17, 1936, Sally F. Story and her husband executed and delivered to their son, Robert Story, a deed for about 85 acres of land in Nicholas County. The consideration was the sum of $2500.00 and "labor performed by said second party for the benefit of said first parties." The grantors retained the use and control of the property during their life.

On September 29, 1941, lunacy proceedings were instituted against Robert, which resulted in his confinement in the Eastern State Hospital, where he remained some six months.

This is an action by Sally Story to have the deed of February 17, 1936 set aside. Shortly after the action was instituted, Robert executed a deed to his mother conveying this property back to her. Following this he filed an answer asking that the petition be dismissed because title to the property was vested in his mother.

Sterlie Smith, committee for Robert, answered and asked that the deed from Robert to Sally be declared void, (on the ground that Robert is an insane person) and that the 1936 deed be upheld. Other pleadings attacked the validity of the lunacy proceedings and raised

the question of failure of consideration for the 1936 deed to Robert. Appellant does not seriously rely on failure of consideration. In her brief she argues that the case turns on two propositions: First, that the lunacy proceeding was void and therefore Robert had a right to file his answer and reconvey the property to her, and second, that if such proceeding is invalid the appointment of the committee for Robert is void and he has no right to make a defense for Robert. Therefore, it seems that the disposition of the matter depends upon the validity of the lunacy proceedings.

A transcript of the proceedings in the Nicholas Circuit Court wherein Robert was declared to be a person of unsound mind is in the record. The petition for the inquest is signed and verified by Mrs. W. P. Stone, a sister of Robert, and was filed on the 29th day of September 1941. On that same day the court entered an order appointing Doctors T. H. Brown and W. B. Hopkins to examine the defendant and certify their findings. The same order appointed an attorney to represent the defendant, and further recited that the medical examiners filed the following report:

"We, the undersigned, have examined the said defendant within the three days just prior to the date of this certificate; that in our judgment he is an insane person and requires supervision and control for his own welfare, which can best be provided by commitment to Eastern State Hospital, Lex., Ky.

"That the foregoing opinion is based upon the following facts and circumstances; that he is of unsound mine, 'insane,' and has illusions and hallucinations, irrational, and at time slightly violent."

This order further recites that on that same day, the 29th of September 1941, a jury was waived and the cause submitted to the court who, after hearing the evidence and report of the physicians, found the defendant to be a person of unsound mind, and that this condition had existed since July 1941. The transcript also contains the history of the case which was sent to the Eastern State Hospital.

The record in this case discloses that the summons was served on Doctors W. B. Hopkins and T. H. Brown, that the two physicians were present and testified at the

trial to the facts set out in their certificate. The record further shows that these physicians stated that it would be injurious to the defendant to bring him before the court. Robert was in jail at the time of the inquest and had been there about three days.

From this statement it is quite clear that the entire proceeding, by which Robert Story was declared a person of unsound mind and committed to the Eastern State Hospital, was had on September 29, 1941.

It is vigorously argued that since Robert was not present in court, nor notified that he was to be tried on the 29th day of September, and since no one else was summoned or notified for him concerning the trial on that day, the requirements of the statutes were not met and the whole proceeding is void.

The record shows that there were present at this trial, the two physicians who examined Robert, Robert's wife and sister, and the attorney appointed to defend him. Section 216aa-72, Ky. St., then in effect, requires that a summons issued on a petition for inquest be served on the parent, guardian or other person having the custody, control or supervision of such person, requiring such person to appear within not less than three days after service. Admittedly three days notice was not given of the inquest, but Section 216aa-73 reads as follows:

"If a person summoned as herein provided shall fail without reasonable cause to appear and abide by the order of the court, he may be proceeded against as in the case of contempt of court. On the return of the summons or other process, or on the appearance of such alleged feeble-minded, epileptic, insane person or idiot with or without summons or other process in person before the court, together with the return of the service of notice, if there be any person notified, or upon the personal appearance or written consent to the proceedings of the person or persons, if any be notified, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case."

This seems to indicate that the court may proceed to dispose of the case upon the personal appearance of the person or persons required to be notified. The rec-

ord in this case discloses that all interested persons except the defendant himself were present in court and that the defendant was in jail and could have been brought into court without delay except for the fact that the physicians advised the court that it would be harmful to him to be present at the proceedings.

It is also complained that the failure to have a trial by jury renders the proceeding invalid, but Section 216aa-74 directly permits a waiver of a jury, and the record in this case shows that a jury was waived.

In support of these contentions appellant cites several cases, all of which are easily distinguished. In the case of McFarland v. Commonwealth, 249 Ky. 128, 60 S. W. 2d 360, the opinion shows that the petition for the inquest was never signed, that no summons was issued, and that practically all of the essential statutory requirements were ignored. In the case of Daly v. Spencer's Committee, 260 Ky. 19, 83 S. W. 2d 502, it appears from the opinion that there was no summons or notice of any kind issued, and that the certificate of the physicians appointed to examine the defendant gave no indication that her condition was such that it would be unsafe to bring her into court. The other cases cited by appellant need not be specifically referred to since all deal with the question of notice, and the principles laid down therein are, of course, correct.

Here, however, we have an entirely different situation. We find that all of the statutory requirements were met except three days had not elapsed between the time of the service of the summons and the time of the trial. However, it is our conclusion that, since all the interested parties, particularly those having custody of the defendant, constructive or otherwise, were present at the trial, waived a jury and apparently consented to an immediate hearing, Section 216aa-73 specifically authorized the court to hear and dispose of the case when he did.

Having determined that the lunacy proceedings were valid, it follows that Robert was properly adjudged to be an insane person; and he remains such until a judgment of restoration is entered. That has never been done, although Robert has unsuccessfully tried to have himself adjudged sane on more than one occasion.

Since Robert was a person of unsound mind at the time he executed the deed conveying the property back to his mother; the deed had no effect whatever. Thus the deed of February 17, 1936 remains in full force and effect and a fee simple title to the property is in Robert (or his committee) subject to the life estate in favor of his mother.

The judgment of the chancellor was correct and it is affirmed.