# IN THE MATTER OF THE GUARDIANSHIP OF LILLIAN R. SMITH

S. Ct. Civ. No. 2009-0117

Supreme Court of the Virgin Islands

November 15, 2010

518

BEVERLY A. EDNEY, ESQ., St. Croix, USVI, *Pro se*.

KATHRYN J. DEPREE, ESQ., St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(November 15, 2010)

HODGE, C.J. Appellant Beverly A. Edney ("Edney") appeals from the Superior Court's March 25, 2009 Order prohibiting her from contacting Lillian R. Smith ("Lillian") and the Superior Court's October 22, 2009 Order striking Edney's appearance as counsel for Lillian, striking all submissions filed by Edney on Lillian's behalf from the Superior Court's file, and ordering Edney to pay the costs associated with her February 24, 2009 motion to vacate an oral August 13, 2008 Order and a written September 11, 2008 Order declaring Lillian incompetent and appointing a guardian to manage her affairs. For the reasons that follow, this Court holds that, under the circumstances of this case, the Superior Court lacked jurisdiction to enter its August 13, 2008 and September 11, 2008 Orders and, accordingly, vacates the March 25, 2009 and October 22, 2009 Orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 2008, Lillian's nephew, Alston Smith ("Alston"), filed a Petition for Guardianship in the Superior Court, which alleged that Lillian "is incapable of conducting her own affairs" because she "suffers from severe dementia of the Alzheimer type" and requested that the Superior Court declare Lillian incompetent and appoint Alston as guardian of her person and estate. (J.A. 13-15.) The Superior Court, in an order entered on August 4, 2008, scheduled a competency hearing for August 13, 2008, which was personally served on Lillian on August 7, 2008.[1]

Alston and Lillian both appeared at the August 13, 2008 hearing. However, while Alston was represented through his counsel, counsel did

---

[1] Although the parties did not include the August 4, 2008 Order or the August 12, 2008 return of return of service in the Joint Appendix, both documents were requested by this Court and subsequently transmitted to it by the Superior Court. *See* V.I.S.CT.R. 10(e) ("[T]he Supreme Court, on proper suggestion or of its own initiative . . . may direct . . . that a supplemental record be certified and transmitted.")

not make an appearance on Lillian's behalf, nor did the Superior Court appoint counsel for Lillian. After hearing testimony from Dr. Joseph DeJames (hereafter "Dr. DeJames"), Alston, and Lillian, the Superior Court orally deemed Lillian incompetent, granted Alston's petition, and appointed Alston as guardian. (J.A. 51-55.) The Superior Court memorialized its oral August 13, 2008 Order into writing on September 11, 2008.

On October 7, 2008, three of Lillian's relatives — Leona I. Smith, Kim Lyons ("Lyons"), and Carmen M. Wesselhoft (collectively "the relatives") — filed a motion to vacate the Superior Court's September 11, 2008 Order on the basis that they are extremely close with Lillian, had never been notified of the August 13, 2008 hearing and, had they known of the hearing, would have testified. Notably, Lyons's affidavit stated that Lillian brought the September 11, 2008 Order to her attention on the day that it had been entered and asked Lyons "to help her." (J.A. 74.) Alston filed an opposition to the motion to vacate on December 12, 2008, which requested that the Superior Court deny the motion because it "fail[ed] to allege any facts in support of the[] request to remove the current guardian" and "d[id] not cite any authority that they were entitled by statute to be notified of the Petition for Guardianship." (J.A. 77.)

On February 24, 2009 — while the October 7, 2008 motion to vacate remained pending — Edney filed a notice of appearance in the Superior Court on behalf of Lillian and filed a motion, brought on behalf of Lillian, to vacate the September 11, 2008 Order. Alston filed a motion to strike Edney's notice of appearance on March 20, 2009 on the grounds that Lillian, having been adjudicated to be incompetent, possessed no legal capacity to consent to Edney's representation. Alston's motion also requested that the Superior Court award him all "reasonable costs and attorney's fees" associated with filing his motion to strike. (J.A. 108.) On the same day, Alston filed a motion for a temporary restraining order, which requested that the Superior Court immediately enjoin Edney and Lyons from contacting Lillian or discussing the guardianship with her. The Superior Court granted Alston's motion for a temporary restraining order in a March 25, 2009 Order, which also scheduled a hearing for April 1, 2009.

Although Edney contended at the April 1, 2009 hearing that the Superior Court lacked jurisdiction to deem Lillian incompetent and appoint a guardian for her because Lillian was not provided with

sufficient notice of the August 13, 2008 hearing, (J.A. 179), the Superior Court refused to consider Edney's argument because "[t]his Court found that it had jurisdiction" and, because the Court had found Lillian incompetent, Edney lacked authority to make any arguments on her behalf. (J.A. 180, 182.) At the conclusion of the hearing, the Superior Court stated that it believed that "none of the pleadings that have been filed [are] appropriately before this Court," but granted Edney and the relatives the opportunity to provide it with additional authority in support of the proposition that an incompetent person could retain an attorney to make an appearance on her behalf, and continued its March 25, 2009 temporary restraining order without date. (J.A. 197-98, 200.) The relatives and Edney, respectively, filed the requested memoranda of law on April 16, 2009 and April 17, 2009, both of which Alston opposed on May 4, 2009.

In three orders entered on October 22, 2009, the Superior Court denied the relatives' October 7, 2008 motion to vacate, granted Alston's March 20, 2009 motion to strike Edney's appearance, and appointed a guardian *ad litem* to represent Lillian. In addition, the Superior Court ordered that Edney reimburse Alston's counsel in the amount of $4,972.52, which the Superior Court observed represented the costs associated with Edney's February 24, 2009 motion to vacate. Edney filed a notice of appeal on November 12, 2009, which requested that this Court review the March 25, 2009 Order and the October 22, 2009 Order striking her appearance and ordering her to pay Alston's attorney's fees. On December 21, 2009, Alston filed a motion to dismiss Edney's appeal for lack of jurisdiction, which this Court denied in a March 29, 2010 Order.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4 § 32(a) (1997). Since the Superior Court's October 22, 2009 Order striking all of Edney's filings and requiring Edney to pay Alston's attorney's fees resolved all claims in the Superior Court with respect to Edney, it constitutes a final appealable

judgment pursuant to section 32(a).[2] Moreover, since Edney's notice of appeal was filed on November 12, 2009, the notice of appeal was timely filed.[3] *See* V.I.S.CT.R. 5(a)(1) ("[T]he notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from. . . .").

■ As a threshold matter, it is important to note that, although Edney's notice of appeal states that she is appealing both the March 25, 2009 and October 22, 2009 Orders, her appellate brief only argues for reversal of the Superior Court's October 22, 2009 Order. As this Court has recently explained,

> Supreme Court Rule 4(c) states that a notice of appeal "shall designate the judgment, order, or part thereof appealed from and the reason(s) or

---

[2] In our March 29, 2010 Order, this Court denied Alston's motion to dismiss for lack of jurisdiction because the March 25, 2009 Order — though claiming to only impose a temporary restraining order — had become a *de facto* injunction due to the Superior Court's decision to extend it without Edney's consent for more than a year. Moreover, even though Edney did not pursue an interlocutory appeal of the temporary restraining order, this Court held that the October 22, 2009 Order — which resolved all claims with respect to Edney — constituted a final appealable judgment. Accordingly, notwithstanding the fact that Edney could have immediately appealed the March 25, 2009 Order pursuant to 4 V.I.C. § 33 once it transformed into an injunction, this Court could also review the temporary restraining order because entry of a final judgment authorizes this Court to review any prior orders entered even if a litigant could have — but did not — appeal one of those prior orders as of right. *See Brill v. McDonald's Corp.*, 28 F.3d 633, 634 (7th Cir. 1994) ("Even if we were to conclude that some earlier order in the sequence could have been appealed . . . the eventual judgment . . . would not become less open to appellate review.").

[3] This Court notes that Edney's appellate brief, November 12, 2009 notice of appeal, December 21, 2009 civil appeal information sheet, and January 7, 2010 opposition to Alston's December 21, 2009 motion to dismiss are all silent as to whether Edney is attempting to bring the instant appeal solely in her personal capacity or on behalf of Lillian. Significantly, in his appellate brief Alston raises a challenge to Edney's standing to make certain arguments on appeal based on the belief that Edney did not bring the instant appeal on behalf of Lillian. However, in her reply brief and at oral argument, Edney — for the first time — expressly stated that she intends to prosecute the instant appeal on behalf of both herself and Lillian, notwithstanding the fact that the Superior Court had appointed a guardian *ad litem* to represent Lillian and that the guardian *ad litem* had previously filed documents on behalf of Lillian in this matter, including a December 22, 2009 notice of no objection to Alston's December 21, 2009 motion to dismiss. Nevertheless, given this Court's ultimate holding that the Superior Court lacked subject matter jurisdiction to enter its August 13, 2008 and September 11, 2008 Orders, it is not necessary for this Court to determine whether Edney could properly represent Lillian on appeal notwithstanding the appointment of a guardian *ad litem* or whether Edney's notice of appeal and subsequent filings were sufficient to place Alston on notice that she intended to prosecute this appeal on behalf of both herself and Lillian.

issue(s) to be presented on appeal." Importantly, however, "[a]ppellate courts will only review a claimed error that . . . is supported by argument and citations to legal authority." *Vern Sims Ford, Inc. v. Hagel*, 42 Wash. App. 675, 713 P.2d 736, 742 (1986). Thus, issues raised in a notice of appeal which are not argued in the appellant's brief are waived. *See, e.g., Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 973-74 (4th Cir. 1997) (holding that issues raised in notice of appeal but not briefed on appeal are deemed waived); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal."); *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 526 (3d Cir. 2003).

*Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009). Accordingly, this Court shall not review the merits of the order granting Alston's motion for a temporary restraining order.[4]

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, this Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction. *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008).

### B. The Superior Court Lacked Jurisdiction to Declare Lillian Incompetent

■■ Edney primarily argues on appeal that this Court should reverse the Superior Court's the October 22, 2009 Order because (1) the Superior Court violated Lillian's due process rights by failing to appoint counsel to represent her at the August 13, 2008 hearing; and (2) the record contains no evidence that Lillian is not competent to retain counsel.[5] However, as

---

[4] Nevertheless, given this Court's ultimate holding that the Superior Court's August 13, 2008 and September 11, 2008 Orders constituted nullities with no legal effect, this Court shall also vacate the March 25, 2009 Order as having been entered without jurisdiction.

[5] In his appellate brief, Alston contends that Edney lacks prudential standing to make these arguments because of "the general prohibition on a litigant's raising another person's legal rights." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315,

this Court has previously observed, the Superior Court may not sanction a party or an attorney for violating an order that exceeded the scope of the Superior Court's jurisdiction, or otherwise attempt to enforce such an order. *In re Najawicz*, 52 V.I. 311, 340 n.19 (V.I. 2009) (citing *United States v. United Mine Workers*, 330 U.S. 258, 294-95, 67 S. Ct. 677, 696-97, 91 L. Ed. 884 (1947)); *see also Kenseth v. Dallas County*, 126 S.W.3d 584, 600 n.14 (Tex. App. 2004) ("The conduct sanctioned by the trial court in . . . Order No. 10 was the challenge to . . . Order No. 9 . . . . The validity of Order No. 10, thus, is tied inextricably to the validity of Order No. 9. If Order No. 9 is void . . . then the order sanctioning attorneys for complaining of that . . . order is void as well."). Thus, there is a "difference between a want of jurisdiction and an erroneous exercise of jurisdiction," in that "if a court has jurisdiction of

---

82 L.Ed.2d 556 (1984)). However, "prudential standing" is a judicially created doctrine that neither the Revised Organic Act of 1954 nor any statute adopted by the Virgin Islands Legislature has mandated that this Court apply. *See, e.g., Interactive Media Entm't & Gaming Ass'n Inc. v. Attorney Gen. of the U.S.*, 580 F.3d 113, 118 (3d Cir. 2009) ("[T]he limitations on third-party standing are prudential requirements developed by the courts, not jurisdictional requirements. . . ."); *Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007) ("[P]rudential standing is not jurisdictional . . . ."). Accordingly, as with other claims-processing rules and practices, a litigant may waive its right to have a court apply a judicially created standing doctrine by not timely asserting that right. *See, e.g., United States v. Olivares-Rangel*, 458 F.3d 1104, 1106 n.1 (10th Cir. 2006) ("[T]he Government has waived this issue by failing to argue it because Fourth Amendment standing is not jurisdictional."). Significantly, because claims-processing rules are equivalent to the statute of limitations and other affirmative defenses, litigants who seek to invoke a claims-processing rule to dismiss or limit an appeal must do so at the first opportunity prior to the case becoming fully briefed. *See Gov't of the V.I. v. Martinez*, 620 F.3d 321, 327-28 (3d Cir. 2010) (explaining that, because time to file notice of appeal in a criminal case is not set by statute, timeliness requirement is a claims processing rule whose application the government forfeited when it failed to respond to order advising parties that court may lack jurisdiction); *see also Archer v. Caribbean Auto Mart, Inc.*, 379 Fed. Appx. 157, 158 (3d Cir. 2010).

Here, Alston filed a motion to dismiss with this Court on December 21, 2009, in which he requested that this Court dismiss the instant appeal on the grounds that the March 25, 2009 and October 22, 2009 Orders purportedly did not constitute appealable final judgments. However, Edney's November 12, 2009 notice of appeal expressly placed Alston on notice that Edney intended to raise the "den[ial of] Lillian Smith['s] due process right to defend the petition for guardianship" as an issue on appeal, and, accordingly, Alston could have challenged Edney's standing to make this argument in his December 21, 2009 motion to dismiss, but chose not to do so. Consequently, Alston waived any challenge to Edney's prudential standing by failing to assert the issue in his December 21, 2009 motion to dismiss, which constituted his first pleading in this appeal.

the subject-matter and the parties, its orders and judgments must be obeyed until reversed and set aside," whereas if a court lacks jurisdiction, its order and all subsequent orders are void and need not be followed. *People ex rel. Emmerson v. Lee*, 311 Ill. 552, 143 N.E. 196 (Ill. 1924). For the reasons that follow, this Court holds that the Superior Court lacked jurisdiction to enter its oral August 13, 2008 Order or its written September 11, 2008 Order.

### 1. *Procedures Established by Statute to Govern Guardianship Proceedings are Jurisdictional*

■ Ordinarily, procedural errors — no matter how egregious — will not constitute jurisdictional defects that render a judgment or order void. *See Morrison v. Bestler*, 239 Va. 166, 387 S.E.2d 753, 756 (1990) (citing RESTATEMENT (SECOND) OF JUDGMENTS, § 11 (1980)). However, this Court has consistently held that when a statute establishes a specific procedure for invoking the Superior Court's jurisdiction, the failure to follow that procedure deprives the Superior Court of its jurisdiction. *See, e.g., Mercer v. Bryan*, 53 V.I. 595, 599 (V.I. 2010); *Worldwide Flight Servs. v. Gov't of the V.I.*, 51 V.I. 105, 108-09 (V.I. 2009); *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450 (V.I. 2008) ("When the time to appeal or seek review is established by statute, timeliness is a jurisdictional issue, therefore a petition filed out of time deprives the court of jurisdiction to entertain the appeal."); *see also Bowles v. Russell*, 551 U.S. 205, 213, 127 S. Ct. 2360, 2366, 168 L. Ed. 2d 96 (2007) ("As we have long held, when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." (internal quotation marks omitted)).

■ Appellate courts have universally applied this same principle to incompetency proceedings, holding that "[w]here a statute prescribes a certain method of procedure to determine whether persons are insane, such inquiries must be conducted in the mode prescribed, and the statute regulating such proceedings must be followed strictly," *In re Swanson*, 115 Wn.2d 21, 804 P.2d 1, 5 (1990) (quoting *In re Eastman*, 151 Wash. 321, 275 P. 724, 724 (1929)), and that orders entered in violation of the statutory procedure are not just subject to reversal on appeal, but are void

for lack of jurisdiction.[6] Moreover, because the failure to comply with statutory requirements intended to safeguard the ward's rights — such as requirements that the ward be personally served or that a hearing be held within a certain period of time — represent deficiencies in the trial court's subject matter jurisdiction, the failure to comply with these requirements may be raised by an appellate court *sua sponte* or asserted by individuals other than the ward to attack the validity of the guardianship order. *See, e.g., Blevins v. Cook*, 66 N.M. 381, 348 P.2d 742, 748 (1960) (declaring guardianship order void for failure to serve ward despite ward's death and fact that challenge to validity of guardianship order was brought in collateral action by ward's son seeking quiet title to real estate sold by guardian); *In re Guardianship of Corless*, 2 Ohio App. 3d 92, 440 N.E.2d 1203, 1204 (1981) (holding, *sua sponte*, that trial court lacked jurisdiction over guardianship proceeding because statute's personal service requirement was jurisdictional and had not been satisfied). Accordingly, the Superior Court could not have obtained jurisdiction to enter either its oral August 13, 2008 Order or its written September 11, 2008 Order until it first complied with all statutory procedures enacted by the Legislature to govern incompetency proceedings.

---

[6] *See also Martin v. White*, 146 F. 461, 463 (9th Cir. 1906) ("The jurisdiction . . . to appoint guardians for insane and incompetent persons is derived from the statute, and in order to obtain such jurisdiction it must affirmatively appear that the essential provisions of the statute were complied with."); *McFarland v. Commonwealth*, 249 Ky. 128, 60 S.W.2d 360, 361 (1933) ("Statutory requirements in lunacy inquests must be strictly complied with or the judgment declaring the defendant to be a person of unsound mind will be void."); *In re Estate of Williams*, 133 Mich. App. 1, 349 N.W.2d 247, 250 (1984) (holding that, because jurisdiction to deem person incompetent and appoint guardian is derived solely from statute, "the failure to give petitioner notice" as required by statute "was jurisdictional and cannot be considered harmless."); *Blevins v. Cook*, 66 N.M. 381, 348 P.2d 742, 746-47 (1960) (holding that trial court's failure to strictly follow statutory procedure was jurisdictional and thus rendered incompetency order a "nullity" that was subject to collateral attack); *Ex parte McLaughlin*, 105 S.W.2d 1020, 1022 (Mo. Ct. App. 1937) ("There is another reason for holding the judgment void. The [incompetency] proceeding against petitioner was in invitum, and if the statutes regulating the proceeding were not followed strictly, the judgment is void."); *State ex rel. Leonidas v. Larson*, 109 Mont. 70, 92 P.2d 774, 774 (1939) ("The provisions of the statute are clear on all of these points, and noncompliance with these provisions was substantial . . . . [W]e must hold that the respondent commissioner was without jurisdiction to make the order of commitment, and the judgment finding relator insane . . . is a nullity."); *Martin v. O'Reilly*, 81 Okla. 261, 200 P. 687, 690-91 (1921) ("Under the statutes of this state . . . the court has jurisdiction to appoint guardian for incompetent persons, but only upon the five days' notice required by statute to be given, and on a hearing had . . . This was not done in this case, and therefore the appointment [of a guardian] is a nullity.").

## 2. The Superior Court Declared Lillian Incompetent Without Complying with the Procedures Mandated by Section 842 of Title 15 of the Virgin Islands Code

 At both the August 13, 2008 hearing and in its September 11, 2008 Order, the Superior Court stated that it was appointing Alston as Lillian's guardian pursuant to sections 821 through 824 of title 15 of the Virgin Islands Code. (J.A. 53, 124.) However, these provisions do not govern the appointment of guardians for incompetent individuals, but, by their own terms, only apply to the appointment of guardians for minors. At the time of all relevant proceedings in the Superior Court,[7] sections 841 and 842 of title 15 of the Virgin Islands Code, as amended by section 76 of title 4,[8] conferred the Superior Court with jurisdiction to "appoint guardians for all insane persons, idiots, and others incapable of conducting their own affairs, who are inhabitants or residents in the Virgin Islands . . . ." 15 V.I.C. § 841(a). Importantly, section 842 prohibits the Superior Court from granting a petition to appoint a guardian for an incompetent person until it first complies with several procedural requirements that are not required when appointing a guardian to a minor pursuant to sections 821 through 824. Pursuant to section 842,

> When the relatives or friends of any insane person residing in the Virgin Islands, or any other persons, who are inhabitants of the Virgin Islands apply to the court, by petition in writing, to have a guardian appointed for him, *the court shall* —
>
> (1) cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, such notice to be *not less than 10 days* before the time so appointed; and
>
> (2) appoint a guardian of his person and estate with the powers and duties specified in this subchapter, if, *after a full hearing,*

---

[7] Although the Legislature, through Act. 7150, repealed all of title 15 of the Virgin Islands Code in its entirety and replaced it with the Virgin Islands Uniform Probate Code, the effective date of these new provisions is not until January 1, 2011. *See Blyden v. People*, 53 V.I. 637, 658 n.15 (V.I. 2010) (holding that, on appeal, this Court applies the law as it was at the time of the Superior Court proceedings).

[8] While sections 841 of title 15 references the "district court," section 76 of title 4 implicitly replaced the phrase "district court" with "Superior Court" by providing that "effective October 1, 1991, the Superior Court shall have original jurisdiction . . . to supervise and administer estates and fiduciary relations" and "to appoint and supervise guardians and trustees."

it appears to the court that the person in question is incapable of taking care of himself.

15 V.I.C. § 842 (emphases added). Thus, in order to obtain jurisdiction to issue an order deeming Lillian incompetent and appointing Alston as her guardian, the Superior Court was required to conduct a "full hearing" and to serve Lillian with notice of the incompetency proceeding "not less than 10 days" before that full hearing. Moreover, because satisfying these requirements is a condition precedent to the Superior Court having the subject matter jurisdiction to grant Alston's petition, the fact that Edney did not challenge the Superior Court's jurisdiction in this Court — even though she made this argument at the April 1, 2009 hearing — does not preclude this Court from independently determining whether the Superior Court complied with those jurisdictional requirements. *See Chavayrez v. Buhler*, S.Ct. Civ. No. 2007-0060, 2009 V.I. Supreme LEXIS 26, *7 (V.I. June 25, 2009) ("[I]t is well established that a court may consider the issue of subject matter jurisdiction *sua sponte*.") (citing *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990)).

■ Here, the Superior Court clearly failed to comply with either requirement. While section 842(1) mandated that Lillian receive ten days notice prior to the August 13, 2008 incompetency hearing, the record indicates that the Superior Court did not enter its scheduling order until August 4, 2008 — nine days before the hearing — and that Lillian was not personally served with the order until August 7, 2008, or six days before the hearing. Although Alston, at oral arguments, argued that Lillian's appearance at the August 13, 2008 hearing constituted a waiver of the notice requirement, courts interpreting statutes with similar or identical language have held that the notice requirement is jurisdictional and cannot be waived even if the proposed ward ultimately appears at the hearing. *See, e.g., North v. Washtenaw Circuit Judge*, 59 Mich. 624, 26 N.W. 810, 819 (1886) ("If Mrs. North was mentally incompetent to have the care and control of her person and the management of her property, she was incompetent to give consent to any legal proceedings, as to waive any of her legal rights relating thereto; and, if she was competent, the probate court had no power to appoint a guardian for her or her estate, even though all her relatives and friends should request it, and she desire and consent to it."); *In re Corless*, 440 N.E.2d at 1204; *In re Wells' Estate*, 133 Ore. 155, 289 P. 511, 512 (Or. 1930) (declaring

order appointing guardian void for failure to ensure alleged incompetent was personally served, even though alleged incompetent appeared at hearing, because "[o]ne of sound mind may waive personal service, but one of unsound mind cannot waive personal service."). Therefore, this Court rejects the argument that Lillian's appearance at the August 13, 2008 hearing could have served as a waiver of the statute's ten day notice requirement.

Likewise, section 842(2) does not just require that the Superior Court conduct a hearing, but that it hold a "full hearing." Although neither section 842 nor any other portion of subchapter 1 of title 15 defines the term "full hearing," the Legislature has directed that "[t]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." 1 V.I.C. § 42. Black's Law Dictionary defines a "full hearing" as "[a] hearing at which the parties are allowed notice of each other's claims and are given ample opportunity to present their positions with evidence and argument." BLACK'S LAW DICTIONARY 738 (8th ed. 2004). *See also Schmidtlien Elec., Inc. v. Greathouse,* 278 Kan. 810, 104 P.3d 378, 387 (2005); (applying Black's Law Dictionary definition of "full hearing" when statute failed to define phrase); *Gourley v. Gourley,* 158 Wn.2d 460, 145 P.3d 1185, 1193 (Wash. 2006) (same).

Although Edney primarily argues in her brief that the oral and written guardianship orders are invalid because the Superior Court failed to appoint counsel for Lillian at the August 13, 2008 hearing, it is not necessary for this Court to determine whether a "full hearing" requires the presence of court-appointed counsel because the hearing transcript clearly demonstrates that the Superior Court provided Lillian with no opportunity — let alone ample opportunity — to present any evidence or argument on her behalf. At the start of the hearing, the Superior Court immediately engaged in the following dialogue with Alston's counsel:

> THE COURT: Very well. We are about to proceed. Attorney DePree, if you have no objection, just to facilitate and move these matters along, I usually ask the questions and if there are any questions I fail to ask, then you will — you can continue where I left off — where I leave off.
>
> ATTORNEY DEPREE: Your Honor, I can barely hear you, sorry.

THE COURT: What I was saying is, usually in these matters I usually begin by asking the questions to expedite matters and if there are any questions I fail to ask, then you would be able to proceed. Do you have any objections to proceeding in that manner where I would ask the doctor the questions first?

ATTORNEY DEPREE: No, Your Honor, I have no objection whatsoever to you asking the questions of the doctor first. . . .

(J.A. 20-21.) Significantly, the Superior Court did not notify Lillian that she had the right to object to this procedure or that she could ask the witnesses any questions. Moreover, after the Superior Court and Alston's counsel concluded their questioning of Dr. DeJames and Alston, the Superior Court immediately excused both witnesses without asking Lillian if she had any questions she would like to ask either witness. (J.A. 31-32, 41, 45.) Importantly, after Alston's counsel informed the Superior Court that Alston had no additional witnesses, the Superior Court did not ask Lillian if she would like to introduce any evidence or make any statement on her own behalf, but immediately rendered its oral decision granting Alston's petition. (J.A. 51.) In other words, the August 13, 2008 hearing not only failed to satisfy the requirements of the "full hearing" mandated by section 842(2), but did not even meet the minimum requirements for a summary proceeding pursuant to Superior Court Rule 102(a). *See Bernhardt*, 51 V.I. at 353 n.9.

 Because the Superior Court violated section 842 when it held the August 13, 2008 hearing on less than ten days notice and failed to provide Lillian with a full hearing, the Superior Court lacked jurisdiction to enter its oral August 13, 2008 Order or its written September 11, 2008 Order. Accordingly, because the Superior Court lacked jurisdiction to declare Lillian incompetent and appoint Alston as her guardian, the Superior Court also lacked jurisdiction to prevent Edney from acting as Lillian's retained counsel or to order that Edney pay Alston's attorney's fees for attempting to vacate the guardianship orders on Lillian's behalf. Consequently, this Court vacates the March 25, 2009 and October 22, 2009 Orders as nullities.[9]

---

[9] Given this Court's holding that the Superior Court's oral August 13, 2008 Order and written September 11, 2008 Order were both nullities without any legal effect, it is not necessary for this Court to decide any of the issues Edney has raised as part of this appeal because none are likely to recur on remand. Importantly, because the Superior Court lacked jurisdiction to

## III. CONCLUSION

Because the Superior Court failed to provide Lillian with ten days notice of the August 13, 2008 hearing or to provide a full hearing, and these requirements were jurisdictional, the Superior Court lacked jurisdiction to enter its August 13, 2008 or September 11, 2008 Orders. Consequently, the August 13, 2008 and September 11, 2008 Orders, as well as all subsequently-entered orders in this matter, are nullities that lack any legal effect. Therefore, this Court vacates the March 25, 2009 and October 22, 2009 Orders and remands the matter to the Superior Court for proceedings consistent with this Opinion.

---

declare Lillian incompetent, no legal obstacle prevents Lillian from retaining Edney or other counsel to represent her in any new proceedings initiated by Alston or others to deem her incompetent.